## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION
## CASE No. 3:17-CV-00073-BJD-PDB

DUSTY RAY SPENCER,

      Plaintiff,

vs.

FLORIDA DEPARTMENT OF
CORRECTIONS, CORIZON HEALTH,
CENTURION MANAGED CARE, L.
MELENDEZ, M.D., G. SHAH, M.D.,
SHUBERT, M.D., and HADDAD, M.D.,

      Defendants.

_____/

## DEFENDANTS CORIZON HEALTH, L. MELENDEZ, M.D. AND G. SHAH, M.D.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Corizon Health, Inc. ("Corizon"), L. Melendez, M.D. ("Melendez") and G. Shah, M.D. ("Shah") (collectively "Corizon Defendants") pursuant to Federal Rules of Civil Procedure 12 and Rule 3.01, Local Rules of the United States District Court for the Middle District of Florida file this Motion to Dismiss Plaintiff's Amended Complaint as follows:

### MOTION

1.    Plaintiff Dusty Ray Spencer ("Spencer") filed suit in this district, bringing a single federal prisoner civil rights claim. The operative pleading is the Amended Complaint ("Complaint") [ECF #23].

2.      The complaint fails to state a claim.

3.      Therefore, the claim against the Corizon Defendants should be dismissed.

## MEMORANDUM OF LAW

### I.      Background

Spencer is a death-sentenced inmate of the Florida Department of Corrections ("FDOC") since 1993, spending his entire incarceration in the Union Correctional Institution [ECF #23, ¶46].[1]   Corizon contracted with FDOC to provide medical care to inmates at Union from September 2013 until Corizon cancelled the contract effective April 24, 2016.   Spencer claims Shah and Melendez were Corizon agents or employees during that period [ECF #23, ¶¶ 8, 11, 13].

The single claim concerns treatment for Hepatitis-C, with which Spencer claims he was diagnosed in 2009.   He also claims he had stage 4 cirrhosis by October 2013 [ECF #23pp. 1-2; ¶¶46, 54, 91], for which the only treatment is transplantation [ECF #23, ¶41].   He claims he should have been given direct acting antivirals, specifically, Soraldi, in May and November 2014 [ECF #23, ¶¶59-60].[2]

The Complaint includes a section regarding the policies of Corizon, FDOC

---

[1]   Spencer's FDOC Inmate Information Detail may be found at
http://www.dc.state.fl.us/activeinmates/detail.asp?Bookmark=1&From=list&SessionID=417965292.
[2]   The Corizon Defendants understand Spencer to mean Sovaldi, which was released for use by the Food and Drug Administration in December 2013 at a per-patient price of more than $80,000.

and Centurion, which began providing medical care after Corizon cancelled its contract.  In a single paragraph, Spencer concludes these Defendants had policies of failing to provide Hepatitis-C cures to inmates [ECF #23, ¶38].  That paragraph is followed by seven paragraphs containing allegations of wrongdoing by FDOC.

Other than being identified as referenced above, there are no factual allegations regarding Melendez.  The only allegations regarding Shah are that he ordered a liver biopsy, thought Spencer might, at some point, need to be evaluated by a liver treatment center, and that he recommended Hepatitis-C treatment.  These events occurred on discrete dates in January and March 2014 [ECF #23, ¶¶54, 56, 58].

## II.   <u>Argument</u>

### A.   <u>Dismissal Standard</u>

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). This inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## B.    Section 1983 and the 8th Amendment

42 U.S.C. § 1983 was enacted as part of the Civil Rights Act of 1871 as the "Ku Klux Klan Act," which was primarily directed to the violence perpetrated by the Klan and the failure of state officials to control those activities. The section provides a remedy for persons deprived of federal rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

The portion now codified as section 1983 was enacted for the purpose of "ensuring a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." *Chapman*, 441 U.S. at 611; *Mitchum v. Foster*, 407 U.S. 225, 238 (1972). Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights conferred by the Constitution or federal statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

To state a viable Eighth Amendment claim of cruel and unusual punishment due to deprivation of medical attention, a plaintiff must allege deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This requires allegations the inmate suffered an objectively serious medical need, and the defendants intentionally disregarded that need. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, (1994); *Estelle at* 106 (1976); *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard

from criminal law).  Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' *Hudson v. McMillian*, 503 U.S. 1, 8, (1992). A serious medical need is one that has been diagnosed by a physician as needing treatment or one for which even a layperson would recognize the need for a doctor's care.  *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999);  *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995) (stating that a serious medical need is one obvious to layperson or supported by medical evidence, like physician's diagnosis).  Additionally, the medical need "must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (internal quotations and citations omitted).  The alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Thus, there must be a "strong likelihood" of injury, "rather than a mere possibility," before an official's failure to act can constitute deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotations omitted).

To satisfy the subjective component, a defendant must be "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and must also have drawn the inference." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (quotation omitted and alterations adopted).

However, "should haves" are not grist for constitutional litigation. "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838).   In this context, deliberate indifference requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence. *Id.*

The Supreme Court has stated that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976);   *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995)(finding that decisions based on medical judgment are not actionable).   In *Estelle*, the court reinstated the district court's dismissal of a prisoner's section 1983 complaint for failure to state a claim.   Recognizing the plaintiff's primary claim was that "more should have been done" to diagnose and treat a back injury, the Court explained, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.   At most it is medical malpractice." *Id.* at 107; *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004)(recognizing that "[n]egligence or even gross negligence does not satisfy this standard").   For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the

conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Because negligence can never be a basis, once an inmate receives medical care, courts are hesitant to find an Eighth Amendment violation has occurred. *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

### C.    Corizon's Constitutional Liability

Because Corizon is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997) (extending the application of *Monell* to private corporations performing traditional public functions); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), *abrogated in part by Bell Atl. Corp.*, 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117

F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000); *see also Monell*, 436 U.S. 658. That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

The *Brown* Court also narrowed the test for causation when it stated:

[I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the

municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404 (emphasis in original).  A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

*Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); *see also Brown*, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004).  There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in

deliberate indifference to his medical needs.  Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In *McDowell*, an inmate was seen and treated for back pain at a local hospital on June 5, 1997.  At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital.  But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first.  The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy.  Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance.  A spinal abscess was diagnosed, and surgery was performed.   After surgery, McDowell was an incomplete paraplegic. *See McDowell at 1286-87.*

*McDowell* arrived at the 11th Circuit after the district court granted summary judgment to the county.  The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. *Id.* at 1289 (citing *Monell*, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " *McDowell,* 392 F.3d at 1290 (quoting *Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403-04 (1997)).  That identification "prevents the imposition of liability based upon an isolated incident." *Id.*  "Rather, the incident must result from a demonstrated practice." *Id*.  The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." *Id.*

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." *Id*.  Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. *Id*. at 1290-91.

Next, the *McDowell* court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.' " *Id.* at 1291 (citing *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)).  The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant

inability to transport."  Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail.  *Id.*

Relying on the Supreme Court's decision in *Brown*, the *McDowell* court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' "  *Id.* (quoting *Brown*, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original).  For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " *McDowell*, 392 F.3d at 1291 (quoting *Brown*, 520 U.S. at 407).  A "showing of simple or even heightened negligence is not enough." *Id.* (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit.  The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound.  *Id.* (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation").

McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." *Id*. at 1292.  Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail.  *Id*.

The court then considered causation.  The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury.  *Id*.  The court recognized the Supreme Court's caveat in *Brown* that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."  *Id*. (quoting *Brown*, 520 U.S. at 410).  To "test the link" between the injury and the County's conduct, the *McDowell* court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision."  *Id*. (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely," that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting *Brown* at 411).  Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered."  *Id*. at 1292 (quoting *Brown* at

411) (emphasis in original).  The *McDowell* court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing.  Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable.  Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before.  To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.

> *Id*. at 1292-93.

Spencer has two methods to establish Corizon's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Corizon.  He must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation.  The Complaint has no allegations of the latter.  It is completely conclusory.

Spencer also does not allege any damages.  He admits he had extensive cirrhosis when Corizon began work according to the contract.  He does not allege his condition worsened in any manner.  Causation and damages are required elements of prisoner civil rights claims.  Therefore, this claim should be dismissed.

To the extent Spencer wants the Corizon Defendants to place him on a "liver transplant list" [ECF #23, p. 16], there are two considerations.  First, Corizon

cannot grant his wish, as it no longer provides medical care in any Florida prison. Second, medical providers do not stock livers as they would medications—whether a patient qualifies for transplantation is within the ambit of organ procurement organizations.  Nothing in the Complaint addresses whether any organization is willing to provide a liver for transplantation to a death row inmate.

### D.   Melendez and Shah's Constitutional Liability

To state a prisoner §1983 claim against an individual, a complaint must also contain allegations of deliberate indifference, but the showing is different.  A successful pleading on this theory requires allegations the inmate suffered an objectively serious medical need, and the defendants intentionally disregarded that need.  *See Farmer v. Brennan,* 511 U.S. 825, 833-38, (1994); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law).  A serious medical need is one that has been diagnosed by a physician as needing treatment or one for which even a layperson would recognize the need for a doctor's care.  *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999);  *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995) (stating that a serious medical need is one obvious to layperson or supported by medical evidence, like physician's diagnosis).

Due process prohibits jail officials from exhibiting deliberate indifference to prisoners' serious medical needs.   However, "should haves" are not grist for constitutional litigation.   The Supreme Court has stated that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).   In *Estelle*, the court reinstated the district court's dismissal of a prisoner's section 1983 complaint for failure to state a claim.   Recognizing the plaintiff's primary claim was that "more should have been done" to diagnose and treat a back injury, the Court explained, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.   At most it is medical malpractice." *Id.* at 107.   "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838); *see Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996) (holding that "negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk"); *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002).

These claims have no factual foundation.   There are no factual allegations regarding Melendez' care.   The allegations regarding Shah show that he provided

care and made recommendations, which forecloses liability. *Harris v. Thigpen*, 941 F.2d at 1507 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (finding that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

### E.   The Complaint is a shotgun pleading.

Complaints that violate Rule 8 of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings."  Although there are different types, each "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach City Sherriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).   In *Weiland*, this Court discussed four types of "shotgun" pleadings which require dismissal:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants

are responsible for which acts or omissions, or which of the
defendants the claim is brought against.

*Weiland* at 1321-23 (footnotes omitted). All four types of "shotgun" pleadings are
deficient because "they fail . . . to give the defendants adequate notice of the claims
against them and the grounds upon which each claim rests." *Id*. at 1323 (footnote
omitted); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d
364, 366 (11th Cir. 1996).  *See Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th
Cir.1997) (explaining that where a complaint alleges claims against multiple
defendants in a single count, the allegations should be read in such a way that they
are directed at each defendant individually); *Williams v. Wells Fargo Bank NA.*,
No. 11-21233-CIV, 2011 U.S. Dist. LEXIS 159463, 2011 WL 13115562, at *5
(S.D. Fla. Oct. 3, 2011).

This is a one count Complaint, against seven Defendants: FDOC, two
corporations and four individuals.  As shown in the previous two sections, the
deliberate indifference standards are different for corporations and governments, as
opposed to individuals.  The deliberate indifference showing is differently applied
to corporations and individuals.  As a result, the claims against multiple, and
different, defendants are improperly mingled into one.  Additionally, Spencer seeks
both damages and an injunction in this single claim.  The result is fourteen claims.
This is clearly an improper pleading.

### III.  <u>Conclusion</u>

For the foregoing reasons, the claim should be dismissed.


By:  <u>    /s/ Gregg A. Toomey        </u>
   Gregg A. Toomey
   Florida Bar No. 159689

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of February, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, and will send a copy of the foregoing via U.S. Mail and/or electronically to the following:

Joseph Hamrick, Esq.
*Attorneys for Plaintiff Spencer*
301 W. Bay Street, Suite 14117
Jacksonville, FL  32202
Phone: 904-310-7494
Email: Joseph.s.hamrick@gmail.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendants Corizon, Melendez and Shah*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL  33901
Phone:  239.337.1630
Fax:  239-337.0307
Email:  gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com, and hms@thetoomeylawfirm.com

By:  ____/s/ Gregg A. Toomey_____
        Gregg A. Toomey
        Florida Bar No. 159689