## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DUSTY RAY SPENCER,

      Plaintiff,

vs.                            CASE NO.: 3:17-cv-00073-BJD-PDB

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

_____/

## CENTURION OF FLORIDA, LLC'S MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Centurion of Florida, LLC ("Centurion") moves to dismiss Plaintiff Dusty Ray Spencer's First Amended Complaint (ECF No. 53).

## INTRODUCTION

Mr. Spencer's lawsuit, in which he claims Centurion violated his constitutional rights by failing to promptly treat his hepatitis C ("HCV") infection, is without merit. Mr. Spencer's Second Amended Complaint fails to state a claim against Centurion because Mr. Spencer fails to identify an independent Centurion policy that resulted in him allegedly not receiving the proper HCV treatment. Additionally, Mr. Spencer's Second Amended Complaint is a shotgun pleading. Accordingly, the Court should grant this Motion and dismiss the Second Amended Complaint.

## ALLEGATIONS FROM COMPLAINT

Mr. Spencer is an inmate incarcerated in the custody of the Florida Department of Corrections ("FDC"), who entered custody in 1993. (ECF No. 53 at ¶ 45). Centurion began providing contractually specified healthcare services for FDC inmates in 2016, taking over from the former contractor, Defendant Corizon, Inc. *Id.* at ¶¶ 8–9.

Mr. Spencer alleges he was diagnosed with hepatitis C ("HCV") in 2009. *Id.* at ¶ 47. Mr. Spencer further claims he was diagnosed with stage four cirrhosis of his liver in 2013. *Id.* at 53. Mr. Spencer alleges he "to this day (March 28, 2018) has received no treatment attempting to eliminate the Hepatitis C virus from his body, despite the existence of highly effective antiviral drugs that [have been] recognized as medically need for Plaintiff." *Id.* at ¶ 69. Mr. Spencer alleges in spite of the prevailing standard of care, "[FDC] and its subcontracting medical care providers have a policy, custom and practice of not providing DAA (direct acting antivirals) medication to prisoners with HCV . . . ." *Id.* at ¶ 37.

Since the filing of the Second Amended Complaint, Mr. Spencer has in fact received treatment for his HCV. (ECF No. 104).

## MOTION TO DISMISS STANDARD

When considering the evidence and ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the Court should construe the complaint's allegations in the light most favorable to the plaintiff. *Gill as Next Friend of K.C.R. v.*

2

*Judd*, 941 F.3d 504, 511 (11th Cir. 2019). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

Nonetheless, the plaintiff must still give the defendants "fair notice" of both the claim and "the grounds upon which it rests" to satisfy her pleading requirements. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 5555 (2007)). Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Thus, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill*, 941 F.3d at 511 (quoting *Iqbal*, 556 U.S. at 678); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal"). Rather, the well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## ARGUMENT

Mr. Spencer's lawsuit should be dismissed because (1) it is a shotgun pleading and (2) Mr. Spencer failed to state a claim.

## I.     The Second Amended Complaint is a shotgun pleading.

Mr. Spencer's Seconded Amended Complaint is an impermissible shotgun pleading that should be dismissed without prejudice. Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." When dismissing a shotgun pleading, district courts must "allow a litigant one chance to remedy such deficiencies." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *accord Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–58 (11th Cir. 2018) (explaining after a court has allowed a plaintiff one opportunity to correct deficiencies, "the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions.").

A complaint that fails to abide by Rule 8(a)(2) runs the risk of being a shotgun pleading. As the Eleventh Circuit explained,

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or

4

> claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

Mr. Spencer's Second Amended Complaint falls into the second category of shotgun pleadings, leaving Centurion in doubt about what allegations support the claims against it. The Second Amended Complaint is premised on conclusory allegations (discussed *infra*) that fail to provide any notice of a specific Centurion policy regarding the treatment of Mr. Spencer's HCV. To be clear, Mr. Spencer alleges FDC, Corizon, and Centurion had policies of not providing adequate HCV treatment, but only describes a specific policy of FDC and none of Centurion. (ECF No. 53 at ¶¶ 37–44). Rather, Mr. Spencer baldly asserts all the service-provider Defendants had a policy of denying proper HCV treatment. With only conclusory allegations supporting the claims against Centurion, Centurion is without notice of what Centurion policy Mr. Spencer alleges is inadequate. This is the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" that court have concluded fails to state a claim. *Iqbal*, 556 U.S. at 678.

For this reason, the Second Amended Complaint fails to give notice to Centurion of the claims against it and the grounds upon which each claim rests. *Weiland*, 792 F.3d at 1323. Accordingly, the Second Amended Complaint should be dismissed, and Mr. Spencer should be ordered to file a third amended complaint that

sets forth the facts and claims against each Defendant in accordance with Rules 8 and 10.

## II.      Failure to state a claim against Centurion.

But even if Mr. Spencer's Second Amended Complaint is not a shotgun pleading, he fails to state a claim for deliberate indifference against Centurion.

### A.      Legal Standards for deliberate indifference claims.

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal citations omitted); *accord Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) ("As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum (because it is not conscience shocking or intolerable to fundamental fairness), then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding court need not reach question of whether less efficacious care was provided pursuant to cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. First, a prisoner must demonstrate "an objectively serious medical need." *Id.* "Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had 'subjective knowledge of a risk of serious harm' and (2) that they 'disregard[ed]' that risk (3) by conduct that was 'more than mere negligence.'" *Id.* (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004))).[1] "With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S.

---

[1] The Eleventh Circuit recognized a "tension within our precedent" regarding whether deliberate indifference requires proof of more than "gross" or "mere" negligence. *Patel v. Lanier Cty. Georgia*, 969 F.3d 1173, 1188 n.10 (11th Cir. 2020). But this may be a distinction without a difference because the Supreme Court likens deliberate indifference to "subjective *recklessness* as used in the criminal law." *Id.*

825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added).

To constitute deliberate indifference, "[m]edical treatment [must be] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271. "[M]ere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017) (quoting *Estelle*, 429 U.S. at 106). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 107). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual

punishment." *Keohane*, 952 F.3d at 1266; *accord Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989))).

A private contractor providing prison medical services, such as Centurion, falls within the reach of § 1983. *See West v. Atkins*, 487 U.S. 42, 54 (1988); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Section 1983 defendants cannot be held liable under theories of *respondeat superior* or vicarious liability, however. *See Iqbal*, 556 U.S. at 676 ("[Defendants] may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"); *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) ("Congress did not intend to create liability under § 1983 unless action pursuant to an official policy or custom caused a constitutional tort."); *Grech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) ("[L]iability under § 1983 may not be based on the doctrine of *respondeat superior*." (citing of *City of Canton v. Harris*, 489 U.S. 378, 385 (1989))).

Instead, a plaintiff succeeds on a § 1983 claim "only where the [contractor] itself causes the constitutional violation at issue" through implementation of an official policy or custom. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (quoting *City of Canton*, 489 U.S. at 385). To establish an

9

official policy or custom of the contractor caused a constitutional violation, a plaintiff must show it was the "moving force" behind the alleged constitutional deprivation. *See Monell* 436 U.S. at 693–94. Thus, to successfully raise a § 1983 claim against Centurion, Mr. Spencer must allege (1) his constitutional rights were violated, (2) Centurion had a custom or policy that constituted deliberate indifference to that particular right, and (3) the policy or custom caused the violation. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown,* 520 U.S. 397, 404 (1997). The Eleventh Circuit defines "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). It is also a requirement that, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

**B.** **Mr. Spencer fails to state a claim because he does not adequately allege that a Centurion policy was the moving force behind an alleged constitutional violation.**

Here, Mr. Spencer's claim against Centurion based on a policy or custom fails for two reasons.

First, Mr. Spencer failed to sufficiently allege the existence of a Centurion policy or custom. A § 1983 plaintiff must "identify either (1) an officially promulgated

[]policy or (2) an unofficial custom or practice []shown through the repeated acts of a final policymaker" *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "Because a [defendant] rarely will have an officially-adopted policy of permitting a particular constitutional violation," most plaintiffs must show the existence of a custom or practice permitting the alleged constitutional violation. *Id.* "Th[e] threshold identification of a custom ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

But Mr. Spencer fails to adequately allege either an official policy or unofficial custom. Instead, he merely states that such a policy or custom exists without factual support. *See Morgan v. Tucker*, 3:13-CV-81-J-34PDB, 2016 WL 1089994, at *6 (M.D. Fla. Mar. 21, 2016) (holding plaintiff's "boilerplate and conclusory allegations of [defendant's] policy or custom—devoid of any factual development—are insufficient to state a § 1983 claim."). That is not enough.

Second, it appears Mr. Spencer is attempting to hold *Centurion* liable for *FDC*'s policy or custom. In the case of a private actor, like Centurion, Mr. Spencer must identify a custom of *that private actor*. It is insufficient to show Centurion was carrying out the policy or practice of another party. That is, Mr. Spencer must prove that Centurion's "'*deliberate* conduct … was the 'moving force' behind his injury . . . .'" *McDowell*, 392 F.3d at 1292. When custom and practice claims are leveled against private contractors operating within a state correctional system, courts ask whether the

11

challenged custom or policy was that of the contractor or, in fact, one imposed by the State. *See Howell v. Evans*, 922 F.2d 712, 724-25 (11th Cir. 1991);[2] *Williams v. Guard Bryant Fields*, 535 F. App'x 205, 211 (3d Cir. 2013). As the Eleventh Circuit explained in *Howell*, the question is whether the private contractor or the state agency was the "final authority" on the matter. 922 F.2d at 725.

The Eleventh Circuit has recognized that, when a correctional system employs a private healthcare contractor, the private contractor cannot be held constitutionally liable for abiding by the policies or customs of the government. *Howell*, 922 F.2d at 723–26. In *Howell*, the representative of an inmate who died of an asthma attack sued both the Georgia Department of Corrections ("GDOC") and CMS, a private healthcare provider for GDOC, alleging deliberate indifference to the inmate's serious medical needs. *Id.* at 715–16, 723–26. The plaintiff alleged CMS had a custom and practice of failing to maintain proper equipment and staff to treat asthmatic patients. *Id.* at 724–26. The Eleventh Circuit rejected the custom and practice claim, recognizing that CMS's providers were responsible for providing care to inmates, but that CMS's policymaker at the facility "was not the final authority on the matters of equipment and staff procurement …." *Id.* at 725. As a matter of law, CMS could not be held liable for GDOC's deficient policies. *Id.*

---

[2] The *Howell* decision was withdrawn by the Eleventh Circuit shortly after it was issued on the representation that the case was settled. That representation turned out to be inaccurate, and the Eleventh Circuit later reinstated the decision. *Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994).

Mr. Spencer includes in his Second Amended Complaint, a section regarding the polices of FDC, Corizon, and Centurion. (ECF No. 53 at p. 9). In one sentence, Mr. Spencer concludes that FDC, Corizon, and Centurion all had policies of not providing adequate HCV treatment. *Id.* at ¶ 37. The remainder of that section discusses the alleged wrongdoings of FDC and does not further mention Centurion. *Id.* at ¶¶ 39–44. The Second Amended Complaint only makes one more allegation of a Centurion policy wherein Mr. Spencer alleges "the actions and/or omissions of the Defendants are indicative of a policy or custom in place with Corizon, Centurion, and [FDC] that is a direct and proximate cause of damage to Plaintiff's health and well-being." *Id.* at ¶ 75. No actual policy or custom of Centurion is described or detailed. Rather, it appears that Mr. Spencer is confusing a policy of FDC for a policy of Centurion.

Here, the FDC is ultimately responsible for creating the FDC's policies and practices for inmate health. *See Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1303 (N.D. Fla. 2017) ("*Hoffer I*") (citing Fla. Stat. § 20.315(3)) ("As Secretary of FDC, Defendant is ultimately responsible for FDC's policies and practices."). While Mr. Spencer cannot pin down a single policy of Centurion in his Second Amended Complaint, he alleges the "[FDC] has enforced the . . . policies, practices, and customs despite knowing that the failure to provide DAA medications to prisoners with HCV subjects those prisoners to an unreasonable risk of . . . permanent damage to their health . . . ." (ECF No. 53 at ¶ 43). But Mr. Spencer does not allege or provide any factual support that Centurion either created the policy or was the final authority in implement the policy. Thus, whatever policy Mr. Spencer is attempting to challenge necessarily predates

13

Centurion's contract with the FDC and was, allegedly, imposed from the top down by the FDC upon Corizon and Centurion alike. The policy therefore cannot be that of Centurion independently.

Indeed, that has been determined to be the case. In *Hoffer*, it was established that the final authority on DAA treatment for inmates in FDC custody was FDC—not Centurion. FDC's policy was to delay DAA treatment due to a lack of funding:

> Although a number of facts remained unclear, the truth uncovered at the hearing was crystal: FDC was shirking its duty to properly treat HCV-infected inmates because the treatment—specifically, the use of direct-acting antivirals ("DAAs")—was too costly. By order dated November 17, 2017, this Court detailed FDC's "long and sordid history of failing to treat HCV-infected inmates," held that Plaintiffs were likely to succeed on their Eighth Amendment deliberate-indifference claim, and granted Plaintiffs' motion for preliminary injunction.

*Hoffer v. Inch*, 382 F. Supp. 3d 1288, 1294 (N.D. Fla. 2019), *rev'd in part, vacated in part sub nom. Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263 (11th Cir. 2020) ("*Hoffer II*"); *see also Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1300 (N.D. Fla. 2017) ("*Hoffer I*") ("[T]his Court finds as a matter of fact that FDC's failure to treat was due to a lack of funding."). By April 2019, FDC had admitted that "FDC's 'failure to treat inmates with cHCV was due to lack of funding.'" *Hoffer II*, 382 F. Supp. 3d at 1295 (quoting FDC court filings). As a result, the *Hoffer* court forced changes to FDC's treatment policies and practices, not those of FDC's contractors. *Id.* at 1315–18; *see also Hoffer I*, 290 F. Supp. 3d at 1305–06.

As explained above, Centurion cannot be liable under § 1983 for an FDC policy or custom, even if Centurion abided by it. *Howell*, 922 F.2d at 723–26. Thus, the

Second Amended Complaint fails to state a claim against Centurion and should be dismissed accordingly.

**CONCLUSION**

The Court should dismiss the claims against Centurion. Mr. Spencer's Second Amended Complaint is a shotgun pleading which should be dismissed. But even if the Second Amended Complaint is not a shotgun pleading, Mr. Spencer's conclusory allegations fail to state a claim against Centurion, thus requiring their dismissal.

Respectfully Submitted,

*/s/ W. Blair Castle*
R. Craig Mayfield (FBN 0429643)
Primary Email: cmayfield@bradley.com
Jacob B. Hanson (FBN 91453)
Primary Email: jhanson@bradley.com
Secondary Email: tbush@bradley.com
Secondary Email: tabennett@bradley.com
W. Blair Castle
Primary Email: bcastle@bradley.com
Secondary Email: pskidmore@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, FL 33602
Telephone: (813) 559-5500 | Fax: (813) 229-5946
*Counsel for Defendant Centurion of Florida, LLC*

**LOCAL RULE 3.01(g) CERTIFICATION**

Undersigned counsel certifies that a conferral was scheduled with Plaintiff for January 10, 2022. Such conferral was cancelled due to Plaintiff being placed on isolation status. The conferral will be rescheduled and undersigned counsel will file a supplement to this certification at that time.

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will electronically provide service to all counsel of record.

**Dusty R. Spencer DC# 321031**          Christopher E. Haddad, M.D.
Union Correctional Institution           4212 53rd Avenue West #2020
P.O. Box 1000                            Bradenton, FL  34210
Raiford, FL 32083


*/s/  W. Blair Castle*
Attorney