UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DUSTY RAY SPENCER,

        Plaintiff,

v.                                Case No. 3:17-cv-73-BJD-PDB

CORIZON HEALTH, INC., et al.,

        Defendants.

_____

**ORDER**

**I. Status**

Plaintiff, Dusty Ray Spencer, an inmate of the Florida penal system, is proceeding on a second amended complaint for the violation of civil rights (Doc. 53; Sec. Am. Compl.) against six Defendants: Corizon Health, Centurion of Florida, LLC, and Drs. Melendez, Shah, Shubert, and Haddad. Plaintiff initiated this case pro se in January 2017 (Doc. 1), seeking damages and injunctive relief in the form of immediate treatment for Hepatitis C and to be placed on a list for a liver transplant. The Court appointed counsel to represent Plaintiff. See Order (Doc. 11), and counsel filed the operative pleading.

Defendants Corizon, Melendez, Shah, and Shubert (collectively, "the Corizon Defendants") filed a motion to dismiss on April 10, 2018 (Doc. 58; Corizon Mot.), and Plaintiff's counsel responded in opposition (Doc. 65; Pl.

Corizon Resp.). The Court did not rule on that motion, however, because, on June 26, 2018, the Court stayed the case pending the resolution of a class action lawsuit filed in the Northern District of Florida on behalf of Florida inmates diagnosed with and requiring treatment for Hepatitis C.[1]

On October 30, 2020, while this case was stayed, the Court granted Plaintiff's attorney's motion to withdraw. See Order (Doc. 80). On December 22, 2020, the Court referred this case again to the Pro Bono Appointment Program to find new counsel for Plaintiff. See Order (Doc. 97). The Hoffer case finally has resolved. Thus, on October 28, 2021, the Court reopened the case, see Order (Doc. 103), and directed Defendants Centurion and Haddad to answer the operative pleading, see Order (Doc. 107). Dr. Haddad did not comply, and the Clerk entered a default against this Defendant. See Clerk's Entry of Default (Doc. 114). Centurion, on the other hand, filed a motion to dismiss (Doc. 109; Centurion Mot.), and Plaintiff filed a pro se response (Doc. 113; Pl. Centurion Resp.).

The deputy clerk has been unsuccessful to date locating replacement counsel to represent Plaintiff on a pro bono basis. However, the Court finds it

---

[1] Plaintiff was a class member of the lawsuit against the Secretary of the Florida Department of Corrections (FDOC). See Hoffer v. Jones, Case No. 4:17-cv-214-MW-CAS. Plaintiff named the FDOC in his complaint in this action, but Plaintiff and the FDOC reached a settlement in early 2021. Thus, Plaintiff voluntarily dismissed his claims against the FDOC. See Order (Doc. 100).

in the interest of justice to rule on the motions to dismiss without further delay given the operative pleading was prepared by counsel, and counsel prepared the response to the Corizon Defendants' motion.

## II. Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

## III. Complaint Allegations

Plaintiff, a seventy-year-old death-sentenced inmate, alleges he was diagnosed with Hepatitis C in 2009, while in the custody of the FDOC. Sec. Am. Compl. ¶ 47. Plaintiff explains, "Hepatitis C is a blood-borne disease caused by the hepatitis C virus (HCV)." Id. ¶ 14 (internal quotation marks omitted). When he filed his operative pleading, Plaintiff had chronic HCV, type 1a, and stage four cirrhosis. Id. ¶ 45. Plaintiff first requested treatment in

3

September 2009, id. ¶ 48, when the standard treatment protocol for Hepatitis C "included the use of interferon and ribavirin medications," id. ¶ 26. On about July 26, 2012, Plaintiff treated with Dr. Montaya at the Reception and Medical Center, who recommended Plaintiff receive treatment and noted Plaintiff had "a normal liver." Id. ¶ 50. Plaintiff alleges his doctor told him a liver biopsy would be needed before he could begin treatment, but by November 2012, a liver biopsy still had not yet been conducted. Id. ¶ 51.

Corizon began its contract with the FDOC in about September 2013. Id. ¶ 52. Two years before that, in 2011, the Food and Drug Administration (FDA) approved new oral medications for Hepatitis C, called direct-acting antiviral (DAA) drugs.[2] Id. ¶ 27. Beginning in 2013, the FDA approved DAA drugs to be taken alone—as opposed to in combination with other medications—for chronic HCV. Id. Plaintiff alleges DAA drugs are the prevailing standard of care to treat chronic HCV because the formerly standard medications "sometime[s] required injections, had long treatment duration (up to 48 weeks), failed to cure most patients, and [were] associated with numerous side effects, including psychiatric and autoimmune disorders, flulike symptoms, gastrointestinal distress, skin rashes, and severe anemia." Id. ¶¶ 26, 32, 37.

---

[2] In Hoffer, the plaintiffs sought in part an order directing the FDOC to treat all inmates with chronic HCV with DAA drugs. See Case No. 4:17-cv-214-MW-CAS (Docs. 1, 10).

4

On about October 18, 2013, Plaintiff had a liver biopsy performed at the direction of Dr. Shah, who then was a Corizon doctor. Id. ¶ 53. Dr. Shah reported that Plaintiff had stage four cirrhosis. Id. In January 2014, Dr. Shah noted Plaintiff "was at high risk of liver failure." Id. ¶ 55. Dr. Shah recommended a pre-dialysis diet and indicated Plaintiff "may need the support of a liver transplant center." Id. On about March 12, 2014, Dr. Shah recommended Plaintiff begin Hepatitis C treatment and sent Plaintiff's chart to Dr. Shubert, Plaintiff's primary care physician. Id. ¶ 57.

Despite Dr. Shah's recommendation, in May 2014, the FDOC denied Plaintiff's request for Interferon, so he submitted an inmate request. Id. ¶ 58. The grievance response, dated May 29, 2014, stated only that "Plaintiff's clinic and lab work [were] reviewed by a committee that follows national guidelines for Hepatitis C treatment." Id. Between May 2014 and February 2016, Plaintiff sought treatment by filing grievances and submitting at least one sick-call request. Id. ¶¶ 58-64.

On about February 16, 2016, Plaintiff treated with Dr. James Miller, who noted there had been no attempt to follow up on Dr. Shah's March 2014 recommendation that Plaintiff begin Hepatitis C treatment. Id. ¶ 65. Dr. Miller instructed as follows: "Move forward per G.I. recommendation." Id. In about May 2016, Centurion took over the contract to provide medical services for

FDOC inmates. <u>Id.</u> ¶ 66. Plaintiff treated with Dr. Haddad on September 6, 2016. <u>Id.</u> ¶ 68. Dr. Haddad noted Plaintiff "was high priority for Hepatitis C treatment." <u>Id.</u> When Plaintiff initiated the action in early 2017, and when he filed his operative pleading in March 2018, he still had not received treatment, nor had he been placed on a liver transplant waiting list. <u>Id.</u> ¶¶ 69-70.

Due to the class action lawsuit, Plaintiff now has received treatment, partially mooting his request for injunctive relief. <u>See</u> Notices (Docs. 105, 106). Plaintiff's deliberate indifference claim for damages remains, as does his request to be placed on a liver transplant list.[3] <u>See</u> Pl. Centurion Resp. at 2.

## IV. The Motions to Dismiss

The Corizon Defendants contend Plaintiff fails to state a plausible deliberate indifference claim because Plaintiff states only in "a single paragraph" that Corizon "had policies of failing to provide" treatment for inmates with Hepatitis C; Plaintiff asserts only a few allegations against Drs. Shubert and Shah; and Plaintiff asserts no factual allegations against Dr. Melendez. <u>See</u> Corizon Mot. at 3. Centurion similarly argues Plaintiff fails to state a plausible claim against it because Plaintiff's policy or custom

---

[3] In his response to the Corizon Defendants' motion, Plaintiff conceded "Corizon is no longer in a position to be subject to an order of this Court granting injunctive relief," because Corizon no longer is under contract with the FDOC. Pl. Corizon Resp. at 3.

allegations are conclusory and not factually supported. <u>See</u> Centurion Mot. at 11-13. Centurion further notes that the <u>Hoffer</u> Court established the FDOC was the final policymaker regarding whether to authorize DAA drugs for inmates with Hepatitis C. <u>Id.</u> at 14. Thus, according to Centurion, Plaintiff "is attempting to hold Centurion liable for [the FDOC's] policy or custom." <u>Id.</u> at 11 (emphasis omitted).

All Defendants argue Plaintiff's complaint constitutes a "shotgun pleading" because Plaintiff asserts his claims against all Defendants in a single claim. <u>See</u> Corizon Mot. at 17-18; Centurion Mot. at 4-5.

Before addressing the substantive allegations against Defendants, the Court finds the operative complaint is not due to be dismissed as a shotgun pleading. Even though Plaintiff incorporates all his general allegations into the single count against all Defendants, his pleading complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. The Eleventh Circuit has explained,

> Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence ... be stated in a separate count ...." <u>Id.</u> The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[ ] his

7

> adversary can discern what he is claiming and frame
> a responsive pleading." Weiland [v. Palm Bch. Cnty.
> Sheriff's Off.], 792 F.3d [1313,] 1320 [11th Cir. 2015)].

Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021). Plaintiff's allegations are short and plain, stated in numbered paragraphs, and sufficiently clear to put Defendants on notice of the claims against them such that they can frame a responsive pleading. See id. Plaintiff alleges all Defendants were deliberately indifferent to his serious medical needs.

## V. Discussion & Conclusions

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege he had "an objectively serious medical need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). "To qualify as a serious medical need, an injury or condition, if not treated, must create a substantial risk of serious harm." Hinson v. Bias, 927 F.3d 1103, 1122 (11th Cir. 2019) (quoting in part Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019)).

Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his

injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002) (identifying the elements of a deliberate indifference claim: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury").

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care . . . or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999). However, "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020). To sufficiently plead the second element (deliberate indifference), a plaintiff must do more than allege the care he received was "subpar or different from what [he] want[ed]." Id. "[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). See also Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) ("[T]he Supreme Court established that 'deliberate indifference' entails more than mere negligence.").

Stated another way, "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." Stone v. Hendry, 785 F. App'x 763, 769 (11th Cir. 2019) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). When a plaintiff has received some treatment, he pleads a deliberate indifference claim only by alleging facts showing the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). "[T]he contemporary standards and opinions of the medical profession . . . are highly relevant in determining what constitutes deliberate indifference to medical care." Howell v. Evans, 922 F.2d 712, 719 (11th Cir. 1991), vacated per settlement, 931 F.2d 711 (11th Cir. 1991), opinion reinstated sub nom., Howell v. Burden, 12 F.3d 190 (11th Cir. 1994) (citing Greason v. Kemp, 891 F.2d 829, 835 (11th Cir. 1990); Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Even if a medical provider is deliberately indifferent to an inmate's serious medical needs, a plaintiff must allege more to proceed against the medical provider's supervisor or the company for whom the provider works. That is because a supervisor or municipality may not be held liable under §

10

1983 on a theory of <u>respondeat</u> <u>superior</u> or vicarious liability. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), <u>abrogated in part on other grounds by</u> <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010). <u>See also</u> <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior.").

Thus, to proceed against a municipality, including a private medical company under contract with a municipality,[4] a plaintiff must allege the existence of a "custom or policy that constituted deliberate indifference to [a] constitutional right" and that caused a constitutional violation. <u>Moody v. City</u> <u>of Delray Bch.</u>, 609 F. App'x 966, 967 (11th Cir. 2015) (citing <u>McDowell v.</u> <u>Brown</u>, 392 F.3d 1283, 1290 (11th Cir. 2004)). <u>See also</u> <u>Monell v. N.Y. City</u> <u>Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) (holding that § 1983 applies to municipalities but liability arises only when a "municipal policy of some nature cause[s] a constitutional tort"). "The 'official policy' requirement was intended to distinguish acts of the <u>municipality</u> from acts of <u>employees</u> of the

---

[4] "[W]hen a private entity ... contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under [§] 1983." <u>Craig v. Floyd Cnty., Ga.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting with second alteration <u>Buckner v. Toro</u>, 116 F.3d 450, 452 (11th Cir. 1997)).

municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original).

## A. Corizon & Centurion: Municipal Liability

Both Corizon and Centurion argue Plaintiff does not state a claim against them because Plaintiff concludes in only one sentence that those companies had policies or customs of not providing adequate treatment for inmates with HCV. Corizon Mot. at 3; Centurion Mot. at 13. Corizon sets forth pages of precedent in apparent support of its position under Rule 12(b)(6), see Corizon Mot. at 5-12, but the cases cited and discussed (some at length) are inapposite because they address issues of proof, not pleading standards. See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 415 (1997) (holding the district court erred in submitting the municipal liability claim to the jury because there was "insufficient evidence on which a jury could base a finding that [the sheriff's] decision to hire [an officer] reflected conscious disregard of an obvious risk" that the officer would use excessive force during arrest (emphasis added)); McDowell, 392 F.3d at 1293-94 (affirming summary judgment in favor of the county because "the record [was] barren of any evidence of implementation of an intentionally malevolent or impermissible policy" (emphasis added)); Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367,

12

1376 (11th Cir. 2000) (affirming summary judgment in favor of the school district and the principal because the "record contain[ed] no <u>evidence</u>" to create a triable issue on a theory of municipal liability (emphasis added)). Centurion too relies on a summary-judgment decision. <u>See</u> Centurion Mot. at 12 (citing <u>Howell</u>, 922 F.2d at 725-26 (holding, based on a review of the contract between the prison and the medical company, that the medical company could not be liable under § 1983 for the acts of its supervising doctor).

At this juncture, Plaintiff does not have to <u>prove</u> a policy or custom was the moving force behind his injury; he merely must allege a policy or custom caused an injury. This, he does. Plaintiff alleges that, at the time Corizon and Centurion were under contract with the FDOC, the generally accepted standard of care for people with chronic HCV—which Plaintiff alleges he had— was through the use of DAA drugs, but "in practice almost no prisoners receive[d] DAA medications." Sec. Am. Compl. ¶¶ 37, 39. Rather, the general practice was to "delay[] treatment for virtually all patients with HCV, regardless of their disease progression." <u>Id.</u> ¶¶ 39, 41.[5] Plaintiff also alleges the

---

[5] The Court acknowledges Plaintiff explicitly references only the FDOC in paragraphs 39 and 41, but his allegations fairly can be interpreted to apply to Corizon or Centurion given the heading of the section under which these paragraphs appear and given Plaintiff mentions the FDOC's "subcontracting medical care providers" in the first paragraph of that section. <u>See</u> Sec. Am. Compl. ¶¶ 37-44.

FDOC's contracting medical companies, which includes Corizon and Centurion, "ha[d] a policy, custom, and practice of not providing DAA medications to prisoners with HCV, in contravention of the prevailing standard of care," and that policy, practice and custom was "a direct and proximate cause of damage to Plaintiff's health and well-being." Id. ¶¶ 37-38, 75.

As to Corizon, Plaintiff further alleges the following: he did not receive treatment for his HCV during the entire time Corizon was the medical provider for inmates despite him having been diagnosed with stage four cirrhosis in October 2013 and being at "high risk of liver failure" in January 2014; he was hospitalized in January 2014 for blood clotting in his leg secondary to Hepatitis C; Corizon employees responded to his multiple requests for treatment; and at least two Corizon doctors recommended Plaintiff should receive treatment. Id. ¶¶ 53-59, 63-65. As to Centurion, Plaintiff further alleges a doctor "noted that he was high priority for Hepatitis C treatment" on September 6, 2016, four months after Centurion's contract began, but, when Plaintiff filed his operative pleading in March 2018, he still had "received no treatment." Id. ¶¶ 66, 68-69.

Together with Plaintiff's custom and policy allegations, these assertions, accepted as true, permit the reasonable inference that the companies providing care for inmates had an official or unofficial policy or custom of declining to

provide DAA medications (or other indicated treatment) for inmates with Hepatitis C or chronic HCV.

Centurion contends the Northern District established the FDOC was the final authority on DAA treatment for inmates, which means Centurion cannot be held liable. Centurion Mot. at 14. However, the plaintiffs in <u>Hoffer</u> sued only the FDOC, not the companies who contracted with the FDOC to provide medical care for inmates. Moreover, just because the FDOC "was shirking its duty to properly treat HCV-infected inmates," <u>id.</u>, does not mean Centurion could not also have adopted an unconstitutional custom or policy with respect to the use of DAA drugs. For instance, in <u>Hoffer</u>, Timothy Whalen, M.D., in his role as Chief Clinical Advisor for the FDOC, offered a declaration dated June 28, 2017. <u>Hoffer v. Jones</u>, Case No. 4:17-cv-214-MW-CAS (Doc. 31-1). Dr. Whalen averred the FDOC had adopted an official policy to guide treatment decisions for HCV-infected inmates, but the policy left to the discretion of an inmate's treating physician whether to prescribe DAA drugs. <u>Id.</u> ¶ 7. He said, "According to the latest HCV policy, all FDOC inmates [at higher risk for complications or disease progression] will be treated with [DAA] drugs if clinically indicated by the inmate's treating physician." <u>Id.</u> Whether Centurion was merely following FDOC policy or custom is an argument best addressed on a more complete record and when Plaintiff has the benefit of counsel.

For the reasons stated, Plaintiff's deliberate indifference claim may proceed against Corizon and Centurion at this stage of the proceedings.

## B. Corizon's Doctors

The Corizon Defendants contend Plaintiff acknowledges Dr. Shah provided care, "which forecloses liability"; Plaintiff alleges that Dr. Shubert was given medical records, "which in no manner fulfills the subjective component" of a deliberate indifference claim; and Plaintiff asserts absolutely no factual allegations against Dr. Melendez. See Corizon Mot. at 16-17.

### i.    Drs. Shah & Shubert

Plaintiff alleges he treated for the first time with Dr. Shah the month after Corizon's contract began with the FDOC. Sec. Am. Compl. ¶¶ 52-53. Dr. Shah evaluated the results of a liver biopsy and diagnosed stage four cirrhosis. Id. ¶ 53. On about January 4, 2014, Dr. Shah noted Plaintiff was "at high risk of liver failure" and recommended a pre-dialysis diet. Id. ¶ 55. Dr. Shah also suggested Plaintiff "may need the support of a liver transplant center." Id. In January 2014, Plaintiff was admitted to the hospital with blood clotting in his leg. Id. ¶ 56. On about March 12, 2014, Dr. Shah recommended that treatment begin for Plaintiff's Hepatitis C, "per Corizon protocol and residential treatment." Id. ¶ 57. Dr. Shah forwarded Plaintiff's medical chart to Dr. Shubert who, Plaintiff alleges, was his primary care physician. Id.

Thereafter, despite two physicians knowing of the severity of Plaintiff's medical condition, absolutely no treatment was provided, according to Plaintiff. Id. ¶ 69. Plaintiff submitted multiple requests for treatment between 2014 and 2016, but still he received no treatment. Id. ¶¶ 58-64. In February 2016, a doctor noted that Dr. Shah's recommendation had not been followed. Id. ¶ 65. That doctor also noted the consult sheet from Dr. Shah's March 2014 evaluation reflected that "the primary care MD at that time [Dr. Shubert] reviewed and signed off on the consult; however, there [was] no indication that there was any attempt made to follow on the chart." Id.

Dr. Shah's argument that liability must be foreclosed because he or she made treatment recommendations is unconvincing under the circumstances. If true that Dr. Shah knew Plaintiff needed immediate treatment and possibly a liver transplant but did not take steps to ensure Plaintiff received even minimal treatment or contributed to a delay in necessary treatment, a reasonable person could construe Dr. Shah's care to have been "so cursory as to amount to no treatment at all." See Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995) (citing Ancata v. Prison Health Svcs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)).

Additionally, accepting as true that Dr. Shubert was Plaintiff's primary care physician who read and signed off on Dr. Shah's March 2014 note, Dr.

Shubert knew of Plaintiff's serious medical need. And the reasonable inference to be drawn from Plaintiff's allegations is that Dr. Shubert, knowing Plaintiff needed medical treatment for a serious, potentially life-threatening illness, failed or refused to provide that care. Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, Plaintiff sufficiently alleges Drs. Shah and Shubert knew of his serious medical needs and knew those needs were not being met and, despite the severity of Plaintiff's condition, took no steps to ensure he received even minimally adequate treatment. Plaintiff's allegations permit the reasonable inference that Drs. Shah or Shubert had "knowledge of the need for care [but did] not . . . provide care . . . or provid[ed] grossly inadequate care, caus[ing] [Plaintiff] to needlessly suffer the pain resulting from his . . . illness." McElligott, 182 F.3d at 1257.

In this respect, the Court finds persuasive the Eleventh Circuit's decision in Howell. In that case, the plaintiff alleged prison officials and medical providers were deliberately indifferent to her husband's asthmatic condition, resulting in his death. Howell, 922 F.2d at 715. Evidence showed that, in June, prison doctors and the prison superintendent jointly recommended to the parole board that the inmate be medically released because the prison was not equipped to provide the medical care or environment he needed. Id. at 716.

Although the superintendent recommended a medical release, six months elapsed between the recommendation and the inmate's death. Id. at 716, 722.

Over that six-month period, the superintendent took no action to ensure the inmate's medical condition was properly treated. Id. at 722. The court held the district court improperly granted summary judgment in favor of the superintendent because a jury could conclude that his failure to do "anything to remedy the deficiency in [the inmate's] care" over that six-month period could constitute deliberate indifference. Id. at 722-23. The Court reasoned as follows:

> [A]ccording to the record . . . [the superintendent] did not seek treatment for [the inmate] at any other facility even though the prison's doctors had noted that such treatment was available, nor did he try to obtain proper equipment. The fact that [the superintendent] was willing to recommend release of an inmate for health reasons indicates that he knew [the inmate] was in serious condition, and raises significant questions about why he did not pursue other measures to help [the inmate] when the release was not granted.

Id. at 722.

Analogously, Plaintiff alleges Drs. Shah and Shubert knew he required immediate medical treatment for his chronic HCV and knew the treatment was not approved or started but took no action over a period of years to ensure the treatment they recommended was provided or to facilitate alternative

19

treatment. Even though Plaintiff does not allege Drs. Shah or Shubert had administrative responsibilities like the defendant in <u>Howell</u>, the reasoning is persuasive insofar as Plaintiff alleges facts permitting the reasonable inference Drs. Shah and Shubert were deliberately indifferent to his serious medical needs because they failed to ensure Plaintiff received <u>any</u> treatment for his Hepatitis C. <u>See id.</u> Thus, Plaintiff's claims against Drs. Shah and Shubert are not due to be dismissed as alleged.

### ii.   Dr. Melendez

Plaintiff references Dr. Melendez one time in his complaint—in the section identifying the parties. Sec. Am. Compl. ¶ 12. Plaintiff alleges Dr. Melendez "was a medical doctor employed by [the FDOC] and/or Corizon and was responsible for Plaintiff's care." <u>Id.</u> In his response to Corizon's motion to dismiss, Plaintiff contends Dr. Melendez was "the Medical Director for Corizon" at the relevant times. Pl. Corizon Resp. at 11. Accepting as true that Dr. Melendez was the Medical Director, a claim against this Defendant in an individual capacity is not sufficiently alleged.[6] Plaintiff does not allege ever having treated with Dr. Melendez, nor does Plaintiff allege Dr. Melendez

---

[6] To the extent Plaintiff seeks to pursue a claim against Dr. Melendez in his official capacity, such a claim would be duplicative of the claim against Corizon. <u>See</u> <u>Monell</u>, 436 U.S. at 691 n.55 (recognizing that "official-capacity suits generally represent only another way of pleading an action against" a municipality of which the individual defendant is an agent).

refused to authorize any care another doctor recommended for Plaintiff. Any claim against Dr. Melendez would be based solely on Dr. Melendez's supervisory role, which is an insufficient basis upon which to premise a claim under § 1983. See Cottone, 326 F.3d at 1360. As such, Plaintiff's deliberate indifference claim against Dr. Melendez is due to be dismissed.

Accordingly, it is now

**ORDERED**:

1.     Defendants Corizon Health, Dr. Melendez, Dr. Shah, and Dr. Shubert's motion to dismiss (Doc. 58) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** only to the extent the claim against Dr. Melendez is dismissed without prejudice for Plaintiff's failure to state a plausible claim for relief under § 1983. In all other respects, the motion is **DENIED**.

2.     Centurion of Florida's motion to dismiss (Doc. 109) is **DENIED**.

3.     Defendants shall answer the complaint (Doc. 53) within **twenty days** of the date of this Order.

4.     The **Clerk** shall terminate Dr. Melendez as a party to this action.

21

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June

2022.

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Dusty Ray Spencer
Counsel of Record

22